IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| EVESTER THARP, #196 360 | * | |
| Petitioner, | * | |
| v. | * | 1:07-CV-172-WKW |
| | | (WO) |
| WARDEN KENNETH JONES, *et al.*, | * | |
| Respondents. | * | |

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION AND PROCEDURAL HISTORY

_____This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed on February 23, 2007 by Petitioner Evester Tharp. Tharp challenges his conviction for capital murder[1] entered against him by the Circuit Court for Houston County, Alabama, on October 19, 2001. The trial court sentenced Tharp to life without the possibility of parole. (*Doc. No. 12, Exh. 1.*)

Tharp filed a direct appeal of his conviction. Tharp maintained on appeal that: (1) the evidence was insufficient to sustain his conviction for capital murder; (2) the trial court erred when it denied his motion for change of venue due to pre-trial publicity; and (3) the

---

[1] A jury found Tharp guilty of the murder of Mary Spivey in violation of Ala. Code § 13A-5-40(a)(4). (*Doc. No. 12, Exh. 1.*)

trial court erred in denying his motion challenging the composition of the petit jury which failed to represent a fair cross section of the community.  The Alabama Court of Criminal Appeals affirmed Tharp's conviction on August 22, 2003 and denied his application for rehearing on September 12, 2003.  The Supreme Court of Alabama denied Petitioner's petition for writ of certiorari and issued a certificate of judgment on November 21, 2003. (*Doc. No. 12, Exhs. 2-5*.)  *See Tharp v. State*, 886 So.2d 179 (Ala.Cr.App. 2003) (table).

Tharp filed a Rule 32 petition in the trial court on May 27, 2004 and an amended petition on August 9, 2004.  He presented the following claims for relief: 1) appellate counsel failed to present in Tharps's application for rehearing and certiorari petition the issue of the sufficiency of the State's evidence; 2) appellate counsel failed to confer with Tharp regarding which issues to raise on appeal; 3) trial counsel  failed to object to the trial court's instruction on accomplice liability; and 4) trial counsel failed to object to a stipulation entered into by the parties. On April 22, 2005 the trial court held a hearing on the petition at which Tharp was represented by counsel.   Following the hearing, the trial court entered an order denying the post-conviction petition.  On appeal the Alabama Court of Criminal Appeals affirmed the lower court's decision and denied Tharp's application for rehearing on May 26, 2006. *Tharp v. State*, 978 So.2d 73 (Ala.Cr.App.) (table).   The Alabama Supreme Court denied his petition for writ of certiorari and issued a certificate of judgment on December 8, 2006. (*Doc. No. 12, Exhs. 6-10*.)

In the instant § 2254 petition Tharp presents the following claims:

1.  The trial court erred by allowing the State and defense counsel to stipulate that Tharp's co-defendant was the trigger man which relieved the State of its burden of proof and prevented the jury from fully determining Tharp's guilt or innocence;

2.  Trial counsel rendered ineffective assistance by entering into a stipulation with the state which implied that Tharp was a participant in the crime but not the trigger man which was inapposite to Tharp's defense that he had no knowledge of the offense nor did he participate in it;

3.  Appellate counsel was ineffective for failing to pursue on rehearing or petition for certiorari the appellate court's determination that the evidence was sufficient to sustain Tharp's conviction;

4. The trial court erred by denying Tharp's motion for acquittal where the evidence was insufficient to demonstrate his involvement in the offense;

5.  The trial court denied Tharp a fair trial based on the jury selection process utilized by the Circuit Court for Houston County which fails to represent a fair cross-section of the community.

(*Doc. No. 1 at 6-9*.)

Respondents filed an answer in which they argue that Tharp's claim that the trial court erred when it allowed the State and defense counsel to stipulate to the fact that Tharp's co-defendant was the triggerman is procedurally defaulted. In support of their procedural default argument, Respondents assert that this claim was not presented to the state courts in accordance with the state's  procedural rules, *see O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), and, thus, Tharp is prohibited from presenting it in the instant petition without a showing of cause and prejudice for the default.  *See Teague v. Lane*, 489 U.S. 288 (1989); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003). With respect to the remaining

3

issues, Respondents maintain that Tharp's claims were properly adjudicated on the merits by the state courts. (*Doc. Nos. 11, 14.*)   *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

Upon review of the § 2254 petition, the answer and supplemental answer of Respondents, and Tharp's response thereto, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  DISCUSSION

*A.  Actual Innocence - Independent Claim*

To the extent Tharp alleges he is innocent of capital murder, the law is well settled "that '[c]laims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' *Herrera v. Collins,* 506 U.S. 390, 400 (1993). It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence [presented at trial or] that has emerged since the trial. 'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact.' *Id." Brownlee v. Haley,* 306 F.3d 1043, 1065 (11th Cir.2002). In accordance with the foregoing directives, Tharp is entitled to no relief from this court on any independent claim of actual innocence.  (*See Doc. No. 16.*)

*B.  The Adjudicated Claims*

To prevail on his § 2254 claims adjudicated on the merits by the state courts, Tharp must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[2] *see Williams*, 529 U.S. at 412-13.  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result.  *Id.* at 405-06.  A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal

---

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)     resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)     resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

principle to a new context in a way that is objectively unreasonable.  *Id*. at 407.  "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"  *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409).  It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide.  *See Williams*, 529 U.S. at 411; *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than

6

through the lens of § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 639 (2003).  The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . " *Id*. at 636. Additionally, a  state court's summary rejection of a federal constitutional issue qualifies as an adjudication on the merits under § 2254(d) so that the summary rejection is entitled to the same deference as a written opinion.  *See Wright v. Sec. of Dept. Of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002).

### i. Sufficiency of the Evidence

Tharp argues that the trial court violated his constitutional rights when it denied his motion for judgment of acquittal where the evidence was insufficient to sustain his conviction. Tharp argues that the only evidence that connected him to the offense was his "association with the aka triggerman."  (*Doc. No 1 at 7.*)

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship,* 397 U.S. 358, 364 (1970). Under § 2254 , habeas relief  on a claim of insufficient evidence is appropriate only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> But this inquiry does not require a court to "ask itself whether it
> believes that the evidence at the trial established guilt beyond a

7

> reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-319.  To be sufficient, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."  *United States v. Harrell*, 737 F.2d 971, 979  (11th Cir.1984).  Sufficiency claims are judged by the elements defined by state law.  *Jackson,* 443 U.S. at 324 n.16.

Tharp raised his  challenge to the sufficiency of the evidence on direct appeal.  The Alabama Court of Criminal Appeals reviewed the evidence in the record and determined that the evidence presented by the State showed the following:

> The victim, Mary Spivey, owned and operated the Seven Day Food Mart, near Highway 52, in rural Houston County.  She lived in five rooms connected to the store.  The victim drove a green minivan which she kept parked in her front yard.
>
> A state's witness, Deborah Hackett, worked for the victim as her assistant manager.  She testified that around noon, on June 23, 1997, she observed Shaber Wimberly in the store with several other black males.  She knew Wimberly because he had been in the store before.  At approximately 7:00 PM that evening, Hackett closed out the register, and put all of her cash, which was approximately $1,000, into a paper sack, took it into the victim's living quarters, and placed it on a desk.  She testified that when she left for the evening, the victim's green minivan was parked in the front yard.
>
> The State presented evidence that approximately 8:00 PM on June 23, 1997, the appellant and Shaber Wimberly left Wimberly's house in Frank Coleman's Pontiac because Wimberly's Buick Regal was low on gas.  After running the [P]ontiac into a ditch, Wimberly called a friend, Ansell  Dawsey, to come and get them. Dawsey set out to pick them up, but ran out of gas in Wimberly's vehicle.  The State presented evidence tending to show that Wimberly and the appellant, having already committed the burglary/ murder, had to return to the crime scene and take the victim's minivan for transportation.  Evidence was

8

presented that they did not return to Wimberly's residence until 3:00AM the following morning. At approximately 2:45 AM on June 24, the victim's green minivan was found burning on Jessie Road, off Highway 52. Upon checking the car registration, it was determined that the vehicle belonged to the victim. Deputy Gary Lindsey, of the Houston County Sheriff's Department, went to the victim's residence, and found her dead on the floor. She had been shot once in the left eye. Her living quarters had been ransacked, and her money and the cash register had been taken from the store.

The State presented the testimony of Ansell Dawsey, who testified that after midnight on June 23, 1997, he was visiting Melitta Wimberly, at Shaber Wimberly's house. He testified that Wimberly and the appellant drove up in a green minivan and asked Dawsey to follow them. With Dawsey following them, Wimberly and the appellant drove out to a dirt road, stopped the minivan, removed a number of items from it, and loaded the goods into the trunk. Dawsey testified that some of the items included a cash register, some cigarettes, and a brown paper sack.

Jesse Carroll testified that at around 1:00 AM on June 24, 1997, Shaber Wimberly waked him and his wife, Mary, and asked them if he could borrow a chain to pull a car from a ditch. He testified that Wimberly was in a green minivan and the appellant was with him. He testified that Wimberly was carrying a "large wad" of money.

James Pruitt testified that shortly after 1:00 AM, Wimberly and the appellant came to his house and asked him to help them take a green minivan "back to [Wimberly's] aunt's house." He testified that Wimberly proceeded to drive the vehicle out to Jessie Road, with Pruitt following him in the car. On the way, Wimberly and Pruitt were stopped by Deputy Jeff Carlisle, when he observed the minivan lose a hubcap. Pruitt testified that he knew Deputy Carlisle, and when he vouched for Wimberly, Deputy Carlisle told them to go home, and answered another call. Wimberly and the appellant drove away, and stopped just a few yards away to set the van on fire. Pruitt testified that Wimberly and the appellant then got in the car with him, and that the appellant had a gun in his possession. Wimberly asked Pruitt to take them to the location where they had "ditched" Frank Coleman's Pontiac. Pruitt helped them rig Jesse Carroll's chain to the Pontiac, and they pulled it out of the ditch. Shaber Wimberly then jumped in the Pontiac and drove off, leaving the appellant and Pruitt on the side of the road. Pruitt then took the appellant to Wimberly's house. While there, both Pruitt and Dawsey saw Wimberly, the

9

appellant, and Frank Coleman, burning something in a barrel.  Later, the appellant took a cash register out of the trunk of Wimberly's car and threw it on the ground, causing it to break open.

The State presented evidence that the following day, Dawsey was paged by Melitta Wimberly to come over and help her dispose of a gun.  Melitta Wimberly retrieved a gun from the attic of the house.  Dawsey took the gun, wrapped it in a towel, and buried it at the end of the street.  The gun was retrieved, tested, and determined to be the murder weapon.

Evidence was presented that Deputy Carlisle's encounter with Wimberly and the appellant in the minivan, and the fact that he knew James Pruitt, ultimately led to the appellant's arrest.

Here, the jury could conclude from the State's evidence that the gun used to kill the victim was transported throughout the night by the appellant. Assuming arguendo, that the appellant did not enter the victim's residence, as he contends, the State still presented  overwhelming evidence of the appellant's guilt based on an accomplice liability theory. § 13A-2-23, Ala. Code 1975.  See Wilson v. State, 777 So. 2d 856, 932 (Ala. Crim. App. 1999) (" 'Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting.  "The jury is to determine whether the appellant's participation exists and the extent of it from the conduct of the parties and all the testimony presented." ' ") Moreover, "[e]vidence of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury." McMurphy v. State, 455 So. 2d 924 (Ala. Crim. App. 1984). The State presented sufficient circumstantial evidence linking the appellant to the murder/burglary.  Because the appellant and Wimberly left Wimberly's house together, remained together throughout the night, were seen driving the victim's minivan, setting it on fire, and later vandalizing its contents, the jury had ample evidence from which it could reasonably infer that appellant was an active participant in the crime.

(*Doc. No. 12, Exh. 4 at pgs. 1-4.*)

The state court rejected Tharp's challenge to the sufficiency of the evidence used to

convict him. This court must, therefore, deny habeas relief unless one of the two exceptions

found in § 2254(d) applies. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001). Having independently reviewed the record, the arguments presented by the parties, applicable statutes, and controlling case law, the undersigned finds that Tharp has not met his burden in this regard. That is, the Alabama Court of Criminal Appeals did not decide Tharp's challenge to the sufficiency of the evidence "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law. *Williams*, 529 U.S. at 413. Consequently, the state appellate court's rejection of the sufficiency claim was not contrary to actual Supreme Court decisions. Further, a thorough review of the evidentiary materials submitted in this case establishes that the state court's rejection of Tharp's argument was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties. (*See Doc. No. 12, Exh. 1.*) Tharp is, therefore, not entitled to habeas relief on his sufficiency of the evidence claim.

   *ii. Ineffective Assistance of Counsel*

   To show a violation of his constitutional right to counsel, Tharp must demonstrate both that counsel's performance fell below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington,* 466 U.S. 668, 686 (1984); *Williams,* 529 U.S. at 390. "The same standard applies whether [a court is] examining the performance of counsel at the trial or appellate level." *Eagle v. Linahan,* 279 F.3d 926, 938 (11th Cir. 2001) (citing *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir. 1987)); *Shere v. Sec. Dept. of Corrections,* ___ F.3d ___, 2008 WL 3066738 *5 (11th Cir.

2008) (to establish appellate counsel's ineffectiveness a petitioner must show deficient performance and, but for appellate counsel's deficient performance, petitioner would have prevailed on appeal). In applying *Strickland,* the court may dispose of an ineffective assistance claim if Tharp fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697.

In assessing the performance of counsel, "a court must indulge a strong presumption that counsel's conduct falls "within the wide range of reasonable professional assistance; that is, [Tharp] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (citation omitted); *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007). Counsel's conduct must be evaluated from the perspective at the time the relevant decision was made and without the distortion of hindsight. *Strickland*, 466 U.S. at 689. *See Lancaster v. Newsome,* 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

With regard to the prejudice requirement, Tharp must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Focusing solely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell,* 506 U.S. 364, 369-70 (1993). Tharp, therefore, must establish "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is

reliable." *Id*. at 369 (quoting *Strickland,* 466 U.S. at 687).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.' " *Dingle,* 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Tharp complains that trial counsel performed deficiently by entering into a stipulation with the State that Tharp's co-defendant was the actual triggerman. Tharp complains that such action amounted to assisting the prosecution in its case because it implied that Tharp was involved in the crime albeit he was not the individual who actually shot the victim. Tharp asserts that counsel's conduct "went against" his defense that he had no knowledge of the crime nor did he  participate in it.

The Alabama Court of Criminal Appeals addressed this challenge to trial counsel's conduct on Tharp's appeal from the denial of his Rule 32 petition.   The relevant portion of this opinion reads as follows:

> Tharp testified that trial counsel was ineffective for allowing a stipulation that conceded that it was Tharp's codefendant, Shaber Chamond Wimberly, who fired the fatal gunshot into the victim and not Tharp.  Tharp asserted that the State should have had to prove the facts of the case.  The circuit court interrupted and the following transpired.
>
> "THE COURT: Let me interrupt you just a minute, Mr. Lamere [(defense attorney)].  Do you understand that probably saved your life?
>
> "THE WITNESS (Tharp): I understand that, too, Judge.

"THE COURT: Okay."

(R. 8-9.)

. . . .

After the hearing, the circuit court issued the following order denying relief to Tharp:

> "The matter before the Court is Evester Tharp's petition for Rule 32 relief.  An evidentiary hearing was conducted April 22, 2005.  The Defendant was represented through appointed counsel, Mr. Matt Lamere.  The State was represented through its assistant district attorney, Mr. David Atwell.
>
> Petitioner alleges that trial counsel was ineffective in that the attorney failed to object to a joint stipulation of fact that co-defendant Wimberly fired the murder weapon instead of Petitioner Tharp.  This allegation of ineffectiveness is preposterous.  This Court tried both capital cases. The Petitioner in the present case was sentenced to life in prison without the possibility of parole.  The co-defendant Wimberly was sentenced to death.  Having actually presided over the trial, this Court is of the opinion that this joint stipulation was instrumental in the jury's recommendation of life without parole and the Court's sentence.

Citing to *Strickland v. Washington*, 466 U.S. 688, the trial court concluded that Petitioner failed to meet the first prong of the *Strickland* standard with regard to his challenge to counsel's performance. The Alabama Court of Criminal Appeals affirmed the lower court's decision concluding that the trial court's reasons for rejecting Tharp's claim of ineffective trial counsel were supported by the record. (*Doc. No. 12, Exh. 9 at pgs. 2-6*; *see also Doc. No. 1 at TR. 797-822*.)

14

In order for Tharp to obtain relief on his ineffective assistance of trial counsel claim, this court must find that the state court's dismissal of his claim involved an unreasonable application of *Strickland*.  As noted, under *Strickland,* the standard by which the state court was required to review Tharp's claim is a two-prong test in which Tharp must prove both ineffective assistance (incompetence) and prejudice. *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986). In order to grant relief, therefore, the state court had to find that Tharp's trial attorney's performance fell below the range of competence demanded of lawyers in criminal cases, and that there was a reasonable probability that, but for counsel's deficient performance, the outcome of the trial would have been different.  *Strickland,* 466 U.S. at 690, 694.

With respect to *Strickland's* first prong - counsel's performance - the record indicates that trial counsel performed adequately. The record reflects that Tharp's trial counsel, as a matter of strategy, made a decision to enter into the challenged stipulation in order to, as the trial court put it, "save[] [Tharp's] life." (*Doc. No. 1, TR. at 797-822.*) In reviewing Tharp's ineffectiveness claims under the *Strickland* standard, the state courts did not decide his claim of ineffective assistance of counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law.  *Williams*, 362 U.S. at 412.  Consequently, the state appellate court's rejection of the ineffective assistance of counsel claim was not contrary to actual Supreme Court decisions. Additionally, based on the record before it, this

court cannot say that counsel's strategic decision to enter into the stipulation with the State was unreasonable. Accordingly, the state court's rejection of Petitioner's ineffective assistance of trial counsel claim was objectively reasonable. *See Williams v. Taylor, supra.* This decision was likewise a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Consequently, Tharp is not entitled to habeas relief on this challenge to trial counsel's performance.

Tharp also challenges the performance of his appellate counsel. Specifically, Tharp argues that appellate counsel failed to pursue review to the Alabama Supreme Court with regard to the Alabama Court of Criminal Appeals' "misapplication" of federal law where it assumed a material fact in reaching its determination that the evidence was sufficient to support the jury's guilty verdict.

The record in this matter reflects that the state courts adjudicated Tharp's challenge to his appellate counsel's performance. The Court of Criminal Appeals' decision affirming the trial court's denial of Tharp's post-conviction petition noted that appellate counsel testified at Tharp's Rule 32 hearing. Appellate counsel testified that while he had never spoken with Tharp directly concerning his appeal, they had corresponded by mail. Appellate counsel further testified that he filed a petition for writ of certiorari with the Alabama Supreme Court which listed only one ground for review and that issued concerned selection of the jury panel. Appellate counsel indicated that he did not pursue certiorari review

16

regarding the sufficiency of the evidence claim because he found no basis under the applicable rules to pursue the claim further.[3] (*Doc. No. 12, Exh. 9 at pgs. 2-6.*)

The Alabama Court of Criminal Appeals rejected Tharp's challenge to appellate counsel's performance concluding that the trial court's reasons for rejecting the claim was supported by the record.[4] The appellate court further held that because Tharp was not entitled

---

The court notes that Respondents argue that Petitioner exhausted his sufficiency of the evidence claim which he presented on direct appeal. (*Doc. No. 11 at pg. 5.*) Respondents, therefore, have waived any requirement of exhaustion or claim of procedural default as to this issue inasmuch as the evidence before the court indicates that appellate counsel did not pursue the sufficiency of the evidence claim in his application for rehearing or in the petition for writ of certiorari which was required to properly exhaust this claim in the state courts. *Will v. Secretary for Dept. of Corr.,* 2008 WL 2067452 n. 4 (11th Cir. 2008); *see also Williams,* 529 U.S. 362. To the extent the court has the discretionary authority to *sua sponte* raise the exhaustion requirement, *see e.g., Day v. McDonough,* 547 U.S. 198 (2006), the court finds no reason to do so in this case and has, accordingly, addressed the merits of the issue.

In its order denying Tharp's Rule 32 petition, the trial court found:

"Petitioner Tharp also alleges that appellate counsel Mr. Charles Decker was ineffective in his representation of the Petitioner on appeal.  However, Petitioner testified that appellate counsel Decker did a fine job in the original appeal to the Court of Criminal Appeals.  His main complaints were that Mr. Decker should have argued that the evidence was not sufficient to convict; that the evidence was circumstantial; and that Mr. Decker did not correspond with him. Mr. Decker testified that he made application for certiorari to the Alabama Supreme Court but was denied.  He further testified that he notified Petitioner of the same.

"A review of Mr. Decker's brief to the Alabama Court of Criminal Appeals presents five issues for review. The first two issues set out in the brief are as follows: (1) Whether there was sufficient evidence to support the conviction of capital murder; and (2) Whether the circumstantial evidence was sufficient to justify a verdict of guilt in this capital murder case. Therefore, Mr. Decker did present these issues on appeal contrary to Petitioner's allegations. . . .

"The standard to be applied in a Rule 32 petition is set out in Strickland v.

(continued...)

to counsel on discretionary review, he could not prevail on his challenges to appellate counsel's performance regarding the filing of an application for rehearing and petition for writ of certiorari.  Specifically, the appellate court held:

> "[A] rehearing is a discretionary review; thus, there is not right to counsel on application for rehearing.  Kinsey [v. State, 545 S. 2d [200,] at 205 [(Ala. Cr. App. 1989)] quoting Wainwright v. Torna, 455 U.S. 586, 71 L.Ed.2d 475, 102 S. Ct. 1300 (1982).  Where there is no right to counsel, there can be no claim of ineffective assistance.  Patty v. State, 652 So. 2d 337 (Ala. Cr. App. 1994)."

Elliot v. State, 768 S. 2d 422, 424 (Ala. Cr. App. 1999).  Because Tharp was not entitled to counsel on rehearing, Tharp cannot prevail on his claim that counsel was ineffective regarding the application for rehearing.

Additionally,

> " 'The right to effective assistance of counsel is dependent on the right to counsel itself.' Evitts v. Lucey, 469 U.S. 387, 369 n.7, 105 S.Ct. 830, 836 n.7, 83 L.Ed.2d 821 (1985).  There is no constitutional right to counsel on a discretionary appeal to the state supreme court.  Ross v. Moffitt, 417 U.S. 600, 610, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Wainwright v. Torna, 455 U.S. 586, 587, 102 S. Ct. 1300, 1301, 71 L.Ed.2d 475 (1982).  'Review by certiorari is entirely discretionary with our Supreme Court (except in [cases in which the death penalty has been imposed]).  See A.RA.P. Rule 39.' Kinsey v. State, 545 So. 2d 200, 203 (Ala. Cr. App. 1989)."

---

(...continued)

Washington, 466 U.S. 688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The Petitioner in this case has failed to produce any evidence to indicate that the attorney's performance was deficient.  Therefore, the Petitioner cannot even meet the first prong of the Strickland test."

(*Doc. No. 12, Exh. 9 at pg. 4.*)

> Jackson v. State, 612 So. 2d 1356, 1357 (Ala. Crim. App. 1992). Because
> Tharp was not entitled to counsel for certiorari review, Tharp cannot prevail
> on his claim that counsel was ineffective regarding the petition for writ of
> certiorari.

(*Doc. No. 12, Exh. 9 at pgs. 5.*)

The State of Alabama authorizes appointment of counsel for a convicted defendant who files a first appeal as of right following his conviction. *See Johnson v. State*, 584 So.2d 881, 883 (Ala. Crim. App. 1991). In affirming the denial of Tharp's post-conviction petition, the Court of Criminal Appeals correctly held that this right to appointed counsel is not further extended for a defendant who seeks either discretionary review in the Supreme Court of Alabama or a writ of certiorari in the United States Supreme Court. *Ross*, 417 U.S. at 610-12, 615-18; *Wainwright*, 455 U.S. at 587 ("a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or application for review in the [United States Supreme] Court." Because Tharp's challenge to appellate counsel's conduct provides no basis for federal habeas corpus relief as no question of a constitutional nature is involved, the claim is due to be dismissed.

### iii.  The Jury Selection Claim

Tharp complains that trial court violated his right to a fair trial under the Sixth Amendment due to the manner in which juries are selected in the Circuit Court for Houston County. Specifically, Tharp argues that potential jurors are chosen from citizens who either

possess a driver's license or a non-drivers-license identification card and  this method of

choosing jurors excludes persons who have neither due to "social reasons of poverty."

     Tharp presented this challenge on appeal of his conviction. The Alabama Court of

Criminal Appeals addressed Tharp's contention that the trial court erred in denying his

motion challenging the composition of his petit jury which he claimed is derived from a

"combination of county residents who hold driver's licenses, and a list of residents who hold

identification cards other than driver's licenses, [and] improperly excludes those persons who

may be too poor to afford the $20 cost of a non-driver-license identification card." (*Doc. No.*

*12, Exh. 4 at pg. 5.*) The appellate court held:

> The Sixth Amendment requires that petit juries be drawn from a source fairly
> representative of the community.  See <u>Acklin v. State</u>, 790 So. 2d 975, 985
> (Ala. Crim. App. 2000). "When the raising of a claim under this requirement,
> a defendant has the burden of establishing a prima facie case of a 'fair cross
> section' violation." <u>Acklin</u>, supra at 985, quoting <u>Sistrunk v. State</u>, 630 So. 2d
> 147, 149 (Ala. Crim. App. 1993).  In Alabama, "[r]andom selection from a list
> of licensed drivers has been held to be an acceptable manner in which to select
> a jury." <u>Acklin v. State</u>, supra at 985.  Additionally, § 12-16-55, Ala. Code
> 1975 provides, that ". ..all qualified citizens (shall) have the opportunity, in
> accordance with this article, to be considered for jury service."  Possession of
> a drivers license, or identification card, is a reasonable criterion under state law
> for the qualification of a person for jury service.

(*Doc. No. 12, Exh. 4 at pg. 5.*)

The Supreme Court has held that a criminal defendant has a Sixth Amendment[5] right to have the jury pool from which grand and petit juries are selected represent a "fair cross-section" of the community. *Taylor v. Louisiana,* 419 U.S. 522, 527-531 (1975). To establish a prima facie case of a violation of this requirement of the Sixth Amendment, a petitioner must show that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 364 (1979). Failure to establish any one of these elements is fatal to the claim. *United States v. Pepe,* 747 F.2d 632, 648 (11th Cir. 1984). However, the *Taylor* Court clarified that there is no constitutional requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. 419 U.S. at 538.

Tharp's challenge to the jury selection process is unavailing as he has presented no evidence, just speculation, that under-representation in his case was due to the systematic exclusion of "impoverished" persons, nor has Tharp produced evidence that impoverished persons are a cognizable class. Tharp has also failed to produce any statistical evidence to establish that the representation of persons considered to be living below the poverty line was

---

Const. Amend. VI states in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial ... by an impartial jury of the State and district wherein the crime shall have been committed"

not fair and reasonable or that this group of persons was under-represented to an unconstitutional degree for a significant period of time. Accordingly, the court concludes that the state court's determination that Petitioner failed to demonstrate trial court error in denying his motion challenging the composition of this petit jury is neither "contrary to" nor an "unreasonable application" of clearly established federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, *supra*. Accordingly, Petitioner is due no relief on his Sixth Amendment challenge.

## C. *Procedural Default*

Respondents assert that Petitioner has procedurally defaulted his claim that the trial court erred when it allowed the State and trial counsel to enter into a stipulation that his co-defendant, Shaber Wimberly, was the "triggerman." The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Thus, claims which have never been presented to a state court or claims which were not exhausted properly in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996) (where state-court remedies are no longer available because petitioner failed to file a direct appeal or initiate timely state post-conviction action, petitioner has procedurally defaulted on his claims and is generally barred from asserting claims in a federal habeas proceeding); *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991) (citations omitted) ("[I]f

22

the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas."); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (when petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by applicable procedural rules, such claims are procedurally defaulted). In the instant action, Petitioner's challenges to his convictions are defaulted due to his failure to present his claims in accordance with the state's procedural rules.

This court may reach the merits of Petitioner's procedurally defaulted claim "only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)].  . . . Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id*." *Henderson*, 353 F.3d at 892.

        *i.  Cause and Prejudice*

        "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the

23

claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11[th]
Cir.1999).  To establish "prejudice," a petitioner must show that there is at
least a reasonable probability that the result of the proceeding would have been
different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.

The court afforded Petitioner an opportunity to demonstrate the existence of cause for

his failure to raise his defaulted claim in the state courts properly and prejudice resulting

from this failure.  In his response, Tharp simply asserts that his claim of trial court error in

allowing the parties to enter into a stipulation is not procedurally defaulted and "bears" on

his allegation of actual innocence. (*Doc. No. 16 at pg. 7.*)

Tharp has not established the existence of  any "objective factor external to the

defense that prevented [him] from raising the claim and which cannot be fairly attributable

to his own conduct." *Murray*, 477 U.S. at 488.  Tharp has, therefore, failed to demonstrate

cause for his failure to present his claim of trial court error to the state courts in compliance

with applicable procedural rules.   Furthermore, Tharp has not shown the existence of actual

prejudice emanating from infringement of federal law. Nevertheless, this court may still

reach the merits of Tharp's procedurally defaulted claim in order to prevent a fundamental

miscarriage of justice.[6]

### ii.  Fundamental Miscarriage of Justice

---

Even if the claim was not defaulted, based on the court's disposition of Tharp's claim regarding trial
counsel's performance, the issue concerning the trial court's conduct in allowing the challenged stipulation
appears equally without merit. *See Estelle v. McGuire,* 502 U.S. 62 (1991); *Osborne v. Wainwright,* 720 F.2d
1237, 1238 (11th Cir. 1983).

24

Tharp maintains that he is not guilty of capital murder.  In support of this contention, Tharp argues that nothing puts him at the scene of the crime except the unreliable testimony of State witness, James Pruitt, that he "just happened to be in association with 'Wimberly' on the day of the event," that being friends with Wimberly did not establish the necessary intent to commit murder, and that he simply helped Wimberly remove a car from a ditch and bust a cash register that Wimberly removed from the victim's store  (*Doc No. 16 at pgs. 2, 3, 8.*)

The miscarriage of justice standard is directly linked to innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Although an actual innocence claim "can itself be defaulted is not to say that the procedural default may not ***itself*** be excused if the petitioner can satisfy the cause-and-prejudice standard [or fundamental miscarriage of justice exception] with respect to that claim." *Edwards,* 529 U.S. at 453 (emphasis in original).   Innocence is not an independent claim; instead, it is the "gateway" through which a petitioner  must pass before a court may consider constitutional claims which are defaulted.  *Schlup*, 513 U.S. at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496; *Schlup v. Delo*, *supra*.   "[T]he *Schlup* standard is demanding and permits review only in the  'extraordinary' case." *House v. Bell,* 547 U.S. 518, 538 (2006) (citations omitted). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id*. at 537.

25

"To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley   v. United States*, 523 U.S. 614, 623 (1998); *House*, 547 U.S. at 538. In this context, Tharp must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Bousley*, 523 U.S. at 623-24; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup*, 513 U.S. at 324.

> *Schlup* observes that

> > a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*. at 324.

The instant claims of innocence are based on the same defenses and evidence presented by Tharp at trial.  The jury rejected these arguments and found Tharp guilty of one count of capital murder.  The court has carefully reviewed the allegations  submitted in support of Tharp's actual innocence argument.  From that review, the court finds that Tharp does not assert that he has "new" reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the court does not reach the merits of his defaulted claim.  Tharp simply presents no evidence nor suggests that any exists

which could satisfy the difficult standard set forth in *Schlup*. His procedurally defaulted claim is, therefore, foreclosed from federal habeas review.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Evester Tharp be DENIED and DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **October 26, 2009**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 13th day of October 2009.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE